THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID WALSTATTER, Appellant.

Second Department, March 10, 1980

## APPEARANCES OF COUNSEL

*John Joseph Sutter (Ruth C. Balkin* on the brief), for appellant.

*Patrick Henry, District Attorney (Harry Organek* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

Appealing his conviction for rape in the first degree, the defendant argues that judicial error deprived him of a fair trial. The rape is alleged to have been committed when the complaining witness visited defendant's business office to be interviewed for a secretarial position. At the trial, she testified that she was forced into sexual intercourse on defendant's couch after a struggle in which he struck her in the face. Since the defendant admitted the intercourse but insisted it was consensual, consent and forcible compulsion were the primary issues at the trial.

■ On this record, there is no basis for an overturn of the jury's verdict. We do not agree with our dissenting colleague's conclusion that the trial court was obligated to comply with defendant's request number 11 that the jury be charged that if the facts adduced permitted of two inferences, one that "the defendant did as he is charged and the other that he did not, then you must draw the one favorable to the defendant, for in a criminal prosecution, he is entitled to every reasonable doubt." This request, described by defendant's counsel as a "circumstantial evidence charge", was not warranted because direct evidence had been submitted to prove each of the three elements of rape in the first degree. It is only when the prosecution relies wholly upon circumstantial evidence to establish the guilt of the accused that a circumstantial evidence charge is necessary (see *People v Tullo,* 41 AD2d 957, affd 34 NY2d 712; *People v Bonifacio,* 190 NY 150; Richardson, Evidence [Prince, 10th ed], § 148). Here, the trial court discussed the three elements which comprise the crime of rape in the first degree and told the jury that it was the prosecution's burden to prove each of those elements beyond a reasonable doubt. Although the defendant did not request the court to define circumstantial evidence, and request number 11 makes no reference to the moral certainty standard, it can only be viewed as an effort to focus the jury's attention on

certain circumstantial facts which could be construed as supportive of the claim that the complainant consented to the intercourse and there was no forcible compulsion. Since the circumstances referred to were relied upon by the defendant to cast doubt upon the complainant's testimony, the charge that each element of the crime had to be established beyond a reasonable doubt provided the defendant with better protection than the language of request number 11. No error was committed when the request was denied.

We also depart from our dissenting colleague concerning the court's charge on forcible compulsion. The court's charge incorporated the language of subdivision 8 of section 130.00 of the Penal Law as follows:

"According to law forcible compulsion means physical force which is capable of overcoming earnest resistance or a threat expressed or implied that places a person in fear of immediate death or serious physical injury to himself or another person, or in fear that he or another person will be immediately kidnapped.

"Earnest resistance means resistance of a type reasonably to be expected from a person who genuinely refuses to participate in sexual intercourse, deviate sexual intercourse, or sexual conduct under all of the attendant circumstances. Earnest resistance does not mean utmost resistance.

"Therefore, if you find that the defendant engaged in sexual intercourse with [the complainant] by forcible compulsion then such sexual intercourse was without [the complainant's] consent."

On the authority of *People v Yanik* (43 NY2d 97), this charge was adequate. In *Yanik*, the complainant visited the defendant's apartment twice and allegedly was raped on the second visit after the defendant had made sexual advances to her on the first. The trial court charged the language of subdivision 8 of section 130.00 of the Penal Law (which at that time contained no definition of earnest resistance) and added to it only the brief comment that the amount of force necessary to place someone in fear or to overcome resistance varies from person to person. Writing for the Court of Appeals, Judge JONES declared (pp 100-101): "While it may be asserted that the instructions given by the trial court were minimal, convictions are not to be set aside because, on reflection in tranquility, better charges could have been composed. Unlike most other human activities rape is an encounter the nature

and dynamics of which can be perceived by the average person, including a juror; the reality of the situation is apprehended without minutely detailed analysis. It follows then that a failure to give unnecessarily expanded, meticulous instructions with respect to the meaning and application of the concept of 'forcible compulsion' in rape cases may be less significant than might otherwise be true. Of course, the individual circumstances of each case will always determine the scope of the particular instructions. We cannot conclude that defendant was prejudiced in this case in consequence of the trial court's failure to give an elaborated charge."

In the instant trial, the court charged the current language of subdivision 8 of section 130.00, which includes a newly inserted definition of "earnest resistance" (see L 1977, ch 692). If an "elaborated charge" was not necessary in *Yanik,* the current charge certainly passes muster.

Finally, there is the matter of the trial court's statement to the jury that: "In the event that you find a guilty verdict then it lies within my power to be sympathetic, merciful in imposing sentence."

While such a statement is best left unmade, it was immediately followed with the following words: "I repeat, sympathy has no place in the jury room or the jury box. Either the defendant has committed a crime or he has not. There is no halfway business about it. The defendant is either entitled to leave this courtroom a free man or he should be convicted."

In *People v Morris* (39 AD2d 750), cited in the dissent, the trial court informed the jury that the defendant might be given probation or be discharged if convicted. On that basis, the Appellate Division reversed the conviction, concluding that the jury might have given the evidence less scrutiny in the belief that the defendant might be conditionally discharged. There is no such implication in the statement under current challenge and the strong direction to either convict the defendant or free him cured whatever erroneous impression might have been conveyed by the earlier reference to sympathy. In any event, upon defendant's request, the court made the following supplemental charge concerning sympathy: "Mr. Foreman, ladies and gentlemen, before I discharge you for your deliberations, so that there's no question about it, I have indicated to you in my instructions that sympathy is to play no part in your deliberations in reaching a verdict in this case. When I say sympathy is to play no part in your delibera-

tions I mean sympathy for anyone involved in this case, whether they be the alleged victim, the defendant, any members of anybody's family, anyone who has testified here. I again repeat to you, sympathy is to play no part in your deliberations."

No further exception was made to the charge.

Since defendant's other contentions also lack merit, there should be an affirmance.

GIBBONS, J. (dissenting). I find that because of several substantial errors committed by the trial court, the defendant has been denied a fair trial and, for that reason, the judgment must be reversed and a new trial ordered.

Although the defendant admitted the act of sexual intercourse, the trial evidence presented sharp questions touching upon whether the act followed forcible compulsion on the part of the defendant, on the one hand, or whether, on the other hand, it came about as a result of the consent on the part of the complainant.

Here, although the complainant testified that she was in a state of fear at the time of the act as a result of the defendant's conduct in grabbing her, slapping her face and throwing her down upon the couch, that she used reasonable, "earnest resistance" to prevent the act of sexual intercourse, and that she made immediate complaint afterwards, the inquiry presented for the jury's determination on this aspect of the case involved the complainant's state of mind in its totality in relation to all of the evidence adduced at the trial, including her testimony and that of the defendant and all of the witnesses.

Essentially, there is a burden upon the prosecution to establish a defendant's guilt beyond a reasonable doubt, and where the normal inferences which may flow from the entire reservoir of facts received at a trial permit the jury to draw an inference that the defendant committed the act by the use of force as charged, or, on the other hand, that he did not because the act was consented to, the court must instruct the jury to consider and evaluate any divergent inferences which may arise.

Without passing upon the weight or the credibility to be given to the evidence in this case, nor to the inferences to be drawn therefrom, it was error for the court not to have instructed the jury in relation to their consideration of the

inferences which may normally flow from the evidence and their assessment of such inferences in determining the existence of reasonable doubt, if any, as the same may affect their verdict. For this reason, the following defendant's requests to charge were improperly refused:

"REQUEST #11

"If the fact or facts proved permit you to draw either of two inferences which might just reasonably support the conclusion that the defendant did as he is charged and the other that he did not, then you must draw the one favorable to the defendant, for in a criminal prosecution, he is entitled to every reasonable doubt."

"REQUEST #19

"Whether the victim here actually indicated such unwillingness or acted in a way which clearly indicated sincere resistance is for you to determine. Or whether the victim's conduct showed a failure or unwillingness to resist, and therefore implied consent, must also be yours to decide."

"REQUEST #22

"Where a defendant is charged with rape in the first degree the question whether resistance was sufficient is one of fact for the jury under Penal Law, Section 130.00 (8), and in such instance the jury should consider the complainant's actions, including any attempt to escape, prompt outcry, the resistance attempted, the circumstances surrounding her ability to resist and attempts made to escape, if any."

"REQUEST #23

"In a prosecution for rape there is always a question for the jury to determine whether resistance was useless under the prevailing circumstances. The state of mind of the person who utters words is controlling on the question as to whether the threats uttered by a defendant may have paralyzed the victim's capacity to resist and undermined her will. If the defendant utters words which were regarded as a threat by the victim but were not so intended by the defendant, there would be no basis for finding the necessary criminal intent to establish guilty of rape."

The resolution of the questions by the jury as to whether the complainant failed to resist because of fear, whether she gave consent, express or implied, and whether she made prompt complaint are all matters particularly involving her state of mind, and which require the jury to consider all of the

surrounding circumstances, and, for that reason, they should have been instructed accordingly, in order to properly perform their function.

In dealing with a complainant's state of mind in a rape prosecution, the court, in *People v Yannucci* (283 NY 546, 549), stated the rule as follows: "It would seem that there is no way jurymen can ever determine whether a woman fails to resist attack because of fear of immediate and great bodily harm, which she has reasonable cause to believe will be inflicted upon her, unless they consider the *surrounding circumstances.* Whether no resistance was offered because of fear is dependent upon the state of the woman's mind. Defendants urge that complainant's failure to resist was not due to fear; she says it was. That was, therefore, a question of fact for the jury to determine from the circumstances". (Emphasis added; see, also, *People v Bercume,* 38 AD2d 356; *People v Vicaretti,* 54 AD2d 236, 242.)

Although corroboration of a complainant's testimony (except in cases where she is underage or mentally incapacitated) is no longer a substantive requirement in a prosecution for rape since the enactment of section 130.16 of the Penal Law in 1974 (L 1974, ch 14), it should be noted that in *People v Bianchi* (55 AD2d 993) the court, after citing *People v Yannucci (supra)* and *People v Bercume (supra)* with approval, recognized that a jury may, after considering the evidence, make reasonable inferences in determining the existence of force that overcomes earnest resistance. And, of course, after such consideration of the evidence, it may also reasonably infer the contrary.

In this connection, it should be noted that although the court correctly instructed the jury on the meaning of forcible compulsion in the language of subdivision 8 of section 130.00 of the Penal Law, it did not address itself to the other evidence in the case that may have raised a reasonable doubt. The jurors received no instructions with respect to the inference of consent that may have been drawn from the following evidence of the conduct of the complainant: remaining in the room and conversing with the defendant after the sexual act and asking him what the other secretaries were doing in the office; having been heard to say to the defendant after the sexual act, "What time should I come back tomorrow?"; the condition of the complainant's undergarments which revealed no tears nor signs of stress; the lack of any evidence of sound

or outcry emanating from the room where the sexual act took place; and such other references to the evidence to enable the jury to weigh these circumstances and the possible inferences which may flow therefrom against the evidence and inferences in the case of force and compulsion favoring the prosecution.

Thus, it was important in the interest of a fair trial for the trial court to have marshaled the evidence and given the charge requested by defendant's counsel concerning circumstantial evidence and the treatment of the conflicting inferences. With respect to every charge requested by defendant regarding circumstantial evidence, the court declined.

I do not disagree with the so-called "to a moral certainty" rule advanced by the majority which applies to a case based wholly on circumstantial evidence. I do say, however, that in a case which presents conflicting direct evidence and substantial circumstantial evidence, which, if considered by the jury, could be viewed favorable to the defendant, the court, where requested, should charge the jury so that it may have an understanding that circumstantial evidence may play some part in its deliberations even in the face of some direct evidence.

The distinction in this use of circumstantial evidence to prove an "entire case" and to prove "only one element" is clearly defined in the following language from *People v Von Werne* (41 NY2d 584, 590): "Where *proof of the entire case* depends upon circumstantial evidence, the standard is even more stringent. 'The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude "to a moral certainty" every reasonable hypothesis of innocence.' (E.g., *People v Benzinger,* 36 NY2d 29, 32; *People v Lagana,* 36 NY2d 71, 73.) However, this later standard has no application where the circumstantial evidence relates to proof of only one element. *(People v Sabella,* 35 NY2d 158, 168; *People v Bonifacio* [190 NY 150], *supra.)* In this case, there was no direct proof of defendant's knowledge. In fact, the defense contended that defendant thought the cars had been legitimately acquired from automobile dealers. Requisite knowledge could be inferred circumstantially from the evidence produced by the People. But such inference could only be drawn by a jury properly charged on the law which controls the use of circum-

stantial evidence to prove an element of the offense." (Emphasis added.)

An individual's state of mind can be established circumstantially. (See *People v Goodman,* 59 AD2d 896.) Insofar as inferences may be drawn from the evidence which may reveal the complainant's state of mind concerning the above-mentioned elements of the crime, by the same token, they may also point to the defendant's intent, and if such inferences are susceptible to diverse interpretations, which may be consistent with either guilt or innocence, it may not be said that guilt has been established beyond a reasonable doubt.

The court's attempt to marshal the evidence fell far below the minimal demands of CPL 300.10 (subd 2), which requires that "[t]he court must also state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts". Here, the only reference in the charge to the facts of the case consists of a statement concerning the expert witnesses and the following two sentences:

"Ladies and gentlemen, in this case it is the contention of the defendant that on February 16, 1977 he did in fact engage in sexual intercourse with [the complainant], but with her consent.

"I charge you that if after reviewing all of the evidence in this case you find that [the complainant] did consent to have sexual intercourse with the defendant then your deliberations shall stop and you shall return a verdict of not guilty."

There was no marshalling of the evidence whatever to explain the application of the law to the facts, particularly with respect to the element of lack of consent (see Penal Law, § 130.05). Such failure to marshal the evidence constituted prejudicial error.

In *People v Mabry* (58 AD2d 897), the court held that: "While a Trial Judge in a criminal case is no longer bound to marshal the evidence, a *bare bones* charge on the law, without in any way relating it to the facts, cannot be sanctioned or approved, regardless of the strength of the proof adduced against the defendant. For that reason alone the judgment must be reversed."

This court in *People v Rivera* (60 AD2d 852, 853) held as follows: "In its charge to the jury, the court did not refer to any of the evidence adduced at the trial. Although defendant

raised no objection on this ground, *the failure to explain the relationship of the applicable principles of law to the factual issues in this complex case requires a new trial in the interest of justice* (see *People v Mabry,* 58 AD2d 897; *People v Clayborn,* 50 AD2d 952, *supra)."* (Emphasis added.)

The reference of the majority to *People v Yanik* (43 NY2d 97), concerns a holding in relation to "the concept of 'forcible compulsion' in rape cases", that the so-called "utmost resistance" charge is not required in a prosecution for rape, and that the trial court's refusal to give such instruction did not prejudice the defendant. The propriety of requests to charge like or similar to those which are considered here *was not passed upon* by the *Yanik* court.

However, and more particularly applicable to the issue presented here, which pertains to the question of the existence or nonexistence of *consent,* the court in *Yanik* confirmed " 'that the most important issue which the jury had to pass upon was the issue of whether the complainant participated in the sexual act voluntarily or whether she was the victim of force' " (p 100).

Following the remand by the Court of Appeals "for determination of the facts (CPL 470.40, subd 2, par [b])", the Appellate Division, First Department, in *People v Yanik* (63 AD2d 574, 575) set aside the verdict as against the weight of the evidence, stating: "This description of complainant's conduct is so at odds with the thesis that the sexual relation between the parties had been compelled as indeed to give rise to an *inference* that defendant may well have felt that there was an invitation to him to do as he did." (Emphasis added.)

Where consent may be a factor in a prosecution for rape and the evidence of the complainant's conduct may support an inference of such consent, it is incumbent upon the court, when requested, to instruct the jury on the law of circumstantial evidence in order to assist it in determining the complainant's state of mind on this issue.

To prepare the jury to deal with this question, the trial court should have, to the extent required by CPL 300.10 (subd 2), explained "the application of the law to the facts" by such necessary marshalling of the evidence and instructions on the law as to enable the jury to determine the same from all of the facts and circumstances of the case *(People v Yannucci,* 283 NY 546, *supra).*

In the course of the court's charge to the jury it stated as follows:

"In arriving at your verdict I say to you there can be no sympathy or prejudice in the jury box or the jury room for a defendant in a criminal case * * *

"*In the event that you find a guilty verdict then it lies within my power to be sympathetic, merciful in imposing sentence.* I repeat, sympathy has no place in the jury room or the jury box. Either the defendant has committed a crime or he has not. There is no halfway business about it. The defendant is either entitled to leave this courtroom a free man or he should be convicted." (Emphasis added.)

The obvious effect of this statement was to instill in the minds of the jury the idea that if the determination of the case proved difficult, a verdict of guilty would be discounted by the court's sympathy on the imposition of the sentence. Such language in a charge is grossly impermissible and tends to dilute the jury's function and to impair its approach to the fact-finding process.

In *People v Morris* (39 AD2d 750, 751), where the trial court charged, "Sometimes * * * [defendants] are given probation; they are discharged * * * He [defendant] may even walk out and be discharged", this court, in holding this to be reversible error, held: *"While juries may be told that punishment is not their concern, beyond that instruction courts ordinarily should not go. In the case at bar, a juror might have heard in the court's language the unsent message that defendant, if convicted, would be conditionally discharged, leading the juror to a scrutiny of the evidence less close than that to which defendant was entitled."* (Emphasis added.)

Absent a specific instruction by the court to the jury to eliminate from their minds its prior remark that "In the event that you find a guilty verdict, then it lies within my power to be sympathetic, merciful in imposing sentence", even repetitions of the proper instruction that "sympathy is to play no part in your deliberations in reaching a verdict in this case", did not erradicate the damaging effect of the prior improper comment to which no curative reference was ever made by the court.

The deficiencies in the court's instructions, coupled with its impermissible suggestion concerning punishment, deprived the defendant of a fair trial and bring this matter within the

orbit of the following rule, stated in *People v Crimmins* (36 NY2d 230, 238): "if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right."

Accordingly, by reason of the foregoing errors, the judgment of conviction should be reversed and a new trial ordered.

LAZER, J. P., GULOTTA and COHALAN, JJ., concur in *Per Curiam* opinion; GIBBONS, J., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the County Court, Suffolk County, rendered February 23, 1979, affirmed.

This case is remitted to the County Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5).